## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NEW YORK
## BUFFALO DIVISION

| | |
|---|---|
| Rosalie Pijacki, individually and on behalf of all others similarly situated,<br><br>　　　　　　　　Plaintiff,<br><br>　- against -<br><br>The Procter & Gamble Company,<br><br>　　　　　　　　Defendant | 1:22-cv-00624<br><br>Class Action Complaint<br><br>Jury Trial Demanded |

Plaintiff alleges upon information and belief, except for allegations pertaining to Plaintiff, which are based on personal knowledge:

1.　　The Procter & Gamble Company ("Defendant") manufactures, markets, and sells aerosol air fresheners under the Febreze brand ("Product") that promise to "Eliminate[s] Odors."

   

2. This representation is consistent across advertisements on television and the internet.

3. Commercials show animated depictions of odor molecules being physically destroyed by the application of Febreze.

4. The Product's website represents they are "designed to actually eliminate bad odors without just masking them."

5. Consumers understand this to mean the elimination of odor (1) at the molecular level by physically destroying the odor molecules and/or (2) at the olfactory level by reducing malodorous molecules to a level where odor is not detectable.

6. However, the Product does not eliminate odors by either criteria.

7. This is shown through analysis of the Product's components and Defendant's own studies.

8. The Product's main active ingredient is hydroxypropyl beta-cyclodextrin ("cyclodextrin").

9. Cyclodextrin does not destroy, convert, or transform odors, but merely envelops and sequesters them, reducing their release into the air and thus the perception of malodor.

10. While the Product contains certain odor absorbers, no credible scientific evidence indicates the compounds used can transform, destroy, or convert malodorous molecules to the point where they are eliminated nor reduce the perception of malodor to be undetectable.

11. Though scientific literature has identified certain compounds that eliminate odor at the molecular level by converting malodorous molecules into smaller non-odorous particles, these compounds are not in the Product.

12. Cyclodextrins are subject to numerous real world limitations which render them unable to "eliminate odors" even by the sequestering of malodor.

13. Defendant's studies in support of the representations that the Product "Eliminate[s] Odors" relied on testing known as Difference From Control ("DFC").

14. DFC determines if there is a difference between one or more test samples and a control, and the extent of any difference.

15. DFC is useful for quality assurance in evaluating batches of the same product.

16. Defendant used DFC to compare the responses of ordinary consumers and trained sensory panelists to malodor and specific Febreze products.

17. The results revealed that trained sensory panelists rated the Product close to three points higher than consumers.

18. However, this was because Defendant instructed consumers to rate odor based on "pleasantness," while experts rated malodor intensity.

19. Such a method is flawed because rating odor "pleasantness" only indicates whether an odor is pleasing, which is different than if consumers can detect malodor.

20. Nonetheless, even applying Defendant's own criteria, the expert responses showed that malodor was not eliminated.

21. This was because the instructions to the panelists were that only -7 on the scale was defined as the absence of malodor in the test chamber compared to the control chamber, while any rating above -7 was merely "weaker" than the control.

22. The expert panelists' findings were that only 20% of the Product and malodor test chambers were rated as -7, defined as the absence of malodor.

23. This means that for 80% of the expert panelists, malodor was not eliminated.

24. These findings were confirmed by studies which evaluated the Product under ASTM protocols.

25. These studies involved microwaving bacon followed by spraying the Product inside the microwaves.

26. Only average consumers were selected to evaluate the bacon aroma because these were the people who Defendant sought to sell the Product to.

27. Instead of using a scale based on pleasantness, the consumers used a traditional 9-point intensity scale ranging from "No bacon aroma" to "very strong bacon aroma," recognized as malodorous.[1]

28. The results were that ordinary consumers determined the Product did not reduce the subject malodors to undetectable levels.

29. The value of the Product that Plaintiff purchased was materially less than its value as represented by Defendant.

30. Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

31. Plaintiff paid more for the Product than she otherwise would have paid had she known the truth, or would not have bought the Product.

32. The Product is sold for a price premium compared to other similar products, no less than $3.99 for 8.8 oz, a higher price than they would otherwise be sold for, absent the misleading representations and omissions.

## Jurisdiction and Venue

33. Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

34. The aggregate amount in controversy exceeds $5 million, including any statutory and

---

[1] Some people admittedly appreciate the smell of bacon.

punitive damages, exclusive of interest and costs.

35. Plaintiff is a citizen of New York.

36. Defendant is an Ohio corporation with a principal place of business in Cincinnati, Ohio, and a citizen of Ohio.

37. The class of persons Plaintiff seeks to represent includes persons who are citizens of different states from which Defendant is a citizen.

38. The members of the class Plaintiff seeks to represent are more than 100, because the Product has been sold with the representations described here for several years, in thousands of locations in the states covered by Plaintiff's proposed classes.

39. The Product is available to consumers from grocery stores, warehouse club stores, convenience stores, big box stores, and online.

40. Venue is in this District because a substantial part of the events or omissions giving rise to the claims occurred here, including Plaintiff's purchase and use of the Product, and her awareness of the promises to "eliminate odors," and her disappointment that they did not eliminate odors.

41. This action should be assigned to the Buffalo Division because Plaintiff resides in Erie County.

## Parties

42. Plaintiff Rosalie Pijacki is a citizen of Hamburg, New York, Erie County.

43. Defendant The Procter & Gamble Company is a corporation organized under the laws of Ohio, headquartered in Ohio and is a citizen of Ohio.

44. Defendant is the world's largest consumer goods company, with hundreds of the most popular brands across categories, including cosmetics, cleaning, batteries, over-the-counter

("OTC") medications and shaving.

45. The Febreze brand is the category leader among a variety of air fresheners which work through different methods.

46. The Product is sold at tens of thousands of locations such as grocery stores, warehouse club stores, convenience stores, drug stores, big box stores, and online.

47. Plaintiff is a retired teacher and educator.

48. Plaintiff bought the Product on one or more occasions within the statute of limitations for each cause of action alleged, at stores including Walmart, 5360 Southwestern Blvd, Hamburg, NY 14075, between August 2021 and March 2022, among other times.

49. Plaintiff bought the Product because she wanted to eliminate odors and expected it eliminated odors at the molecular level through physical processes which destroyed malodorous molecules and at the olfactory level by reducing malodorous molecules to a level that odor was not detectable.

50. Plaintiff was disappointed with the Product because it failed to eliminate odors when she used it in areas of malodor.

51. Plaintiff bought the Product at or exceeding the above-referenced price.

52. Plaintiff relied on the representations identified here that the Product "Eliminates Odors."

53. Plaintiff would not have purchased the Product if she knew the representations were false and misleading.

54. Plaintiff chose between Defendant's Product and other similar products which were represented similarly, but which did not misrepresent their attributes and/or lower-priced products which did not make the claims made by Defendant.

55. Plaintiff paid more for the Product than she otherwise would have, and the Product was worth less than what she paid and she would not have paid as much absent Defendant's false and misleading statements and omissions.

## Class Allegations

56. Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following classes:

> **New York Class:** All persons in the State of New York who purchased the Product during the statutes of limitations for each cause of action alleged; and

> **Consumer Fraud Multi-State Class**: All persons in the States of New Mexico, Utah, Montana, Idaho and Alaska who purchased the Product during the statutes of limitations for each cause of action alleged.

57. Common questions of law or fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

58. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

59. Plaintiff is an adequate representative because her interests do not conflict with other members.

60. No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

61. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

62. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

New York General Business Law ("GBL") §§ 349 and 350

(Consumer Protection Statute)

63. Plaintiff incorporates by reference all preceding paragraphs.

64. Plaintiff desired to purchase an air freshener that eliminated odors at the molecular level through physical processes which destroyed malodorous molecules and at the olfactory level by reducing malodorous molecules to a level that odor was not detectable.

65. The Product did not eliminate odors according to either criteria.

66. Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions.

67. Plaintiff relied on the representations.

68. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Violation of State Consumer Fraud Acts

(Consumer Fraud Multi-State Class)

69. The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class prohibit the use of unfair or deceptive business practices in the conduct of trade or commerce.

70. Defendant intended that Plaintiff and each of the other members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct, and a reasonable person would in fact be misled by this deceptive conduct.

71. As a result of Defendant's use or employment of artifice, unfair or deceptive acts or business practices, Plaintiff, and each of the other members of the Consumer Fraud Multi-State Class, have sustained damages in an amount to be proven at trial.

72. In addition, Defendant's conduct showed malice, motive, and the reckless disregard

of the truth such that an award of punitive damages is appropriate.

Breaches of Express Warranty,
Implied Warranty of Merchantability/Fitness for a Particular Purpose and
Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*

73. The Product was manufactured, labeled, and sold by Defendant and expressly and impliedly warranted to Plaintiff and class members that they eliminated odors at the molecular level through physical processes which destroyed malodorous molecules and at the olfactory level by reducing malodorous molecules to a level that odor was not detectable.

74. Defendant directly marketed the Product to Plaintiff and consumers through its advertisements and marketing, through various forms of media, on the packaging, in print circulars, direct mail, product descriptions, and targeted digital advertising.

75. Defendant knew the product attributes that potential customers like Plaintiff were seeking and developed its marketing and labeling to directly meet those needs and desires, which was the elimination of odors without just masking them through strong scents and fragrances.

76. Defendant's representations about the Product were conveyed in writing and promised it would be defect-free, and Plaintiff understood this meant they eliminated odors at the molecular level through physical processes which destroyed malodorous molecules and at the olfactory level by reducing malodorous molecules to a level that odor was not detectable.

77. Defendant's representations affirmed and promised that the Product eliminated odors at the molecular level through physical processes which destroyed malodorous molecules and at the olfactory level by reducing malodorous molecules to a level that odor was not detectable.

78. Defendant described the Product so Plaintiff and consumers believed they eliminated odors at the molecular level through physical processes which destroyed malodorous molecules and at the olfactory level by reducing malodorous molecules to a level that odor was not detectable, which became part of the basis of the bargain that it would conform to its affirmations and

promises.

79. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

80. This duty is based on Defendant's outsized role in the market for this type of product, the leading brand of air freshener in the world, honestly marketed to consumers.

81. Plaintiff recently became aware of Defendant's breach of the Product's warranties.

82. Plaintiff provides or will provide notice to Defendant, its agents, representatives, retailers, and their employees that it breached the Product's express and implied warranties.

83. Defendant received notice and should have been aware of these issues due to complaints by third-parties, including regulators, competitors, and consumers, to its main offices, and by consumers through online forums.

84. The Product did not conform to it affirmations of fact and promises due to Defendant's actions.

85. The Product was not merchantable because it was not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not conform to the promises or affirmations of fact made on the packaging, container, or label, because it was marketed as able to eliminate odors at the molecular level through physical processes which destroyed malodorous molecules and at the olfactory level by reducing malodorous molecules to a level that odor was not detectable.

86. The Product was not merchantable because Defendant had reason to know the particular purpose for which the Product was bought by Plaintiff, because she expected it eliminated odors at the molecular level through physical processes which destroyed malodorous molecules and at the olfactory level by reducing malodorous molecules to a level that odor was

not detectable, and she relied on Defendant's skill and judgment to select or furnish such a suitable product.

87. Plaintiff would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

### Negligent Misrepresentation

88. Defendant had a duty to truthfully represent the Product, which it breached.

89. This duty is based on Defendant's position, holding itself out as having special knowledge and experience in this area, as custodian of the Febreze brand.

90. Defendant's representations and omissions regarding the Product went beyond the specific representations on the packaging, as they incorporated the extra-labeling promises and commitments to quality, transparency and putting customers first it has been known for.

91. These promises were outside of the standard representations that other companies may make in a standard arms-length, retail context.

92. The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in Defendant, the custodian of the leading Febreze brand of air fresheners.

93. Plaintiff reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, her purchase of the Product.

94. Plaintiff would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

### Fraud

95. Defendant misrepresented and/or omitted the attributes and qualities of the Product, that it eliminated odors at the molecular level through physical processes which destroyed

malodorous molecules and at the olfactory level by reducing malodorous molecules to a level that odor was not detectable.

96. Defendant designed studies which gave more importance to the opinions of trained sensory experts than ordinary consumers when it came to the elimination of malodors.

97. Defendant's studies only required ordinary consumers to judge the pleasantness of the Product and not its ability to eliminate malodors.

98. A possible reason for providing a separate scale to consumers was because Defendant may have known the Product would not eliminate odors.

99. Defendant's testing methodology, difference from control, is known for being used in different types of studies than what it was used for here.

100. Defendant's fraudulent intent is evinced by its knowledge that the Product was not consistent with its representations.

<u>Unjust Enrichment</u>

101. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

   **WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the class;

2. Awarding monetary damages, statutory and/or punitive damages, and restitution pursuant to any statutory claims and interest pursuant to the common law and other statutory claims;

3. Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and

experts; and

4. Other and further relief as the Court deems just and proper.

Dated: August 19, 2022

          Respectfully submitted,

          /s/ Spencer Sheehan
          Sheehan & Associates, P.C.
          60 Cuttermill Rd Ste 412
          Great Neck NY 11021
          (516) 268-7080
          spencer@spencersheehan.com

Case 1:22-cv-00624-JLS   Document 1   Filed 08/19/22   Page 13 of 13