**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK
BUFFALO DIVISION**

| | |
|---|---|
| ROSALIE PIJACKI, individually and on behalf of all others similarly situated, | |
| Plaintiff, | Civil Case No. 1:22-cv-00624 |
| v. | |
| THE PROCTER & GAMBLE COMPANY, | **ORAL ARGUMENT REQUESTED** |
| Defendant. | |

**DEFENDANT THE PROCTER & GAMBLE COMPANY'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT**

**GOLDBERG SEGALLA**
Cheryl A. Possenti
665 Main Street
Buffalo, NY 14203
cpossenti@goldbergsegalla.com
(716) 566-5444

**COVINGTON & BURLING LLP**
Henry Liu (*pro hac vice* pending)
Andrew Soukup (*pro hac vice* pending)
Alyssa Vallar (*pro hac vice* pending)
One City Center
850 Tenth Street, NW
Washington, DC 20001
hliu@cov.com
asoukup@cov.com
avallar@cov.com
(202) 662-6000

*Attorneys for Defendant
The Procter & Gamble Company*

Dated:  November 2, 2022

34588970.v1

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ............................................................................................................1

BACKGROUND ..............................................................................................................2

PROCEDURAL STANDARD ...........................................................................................4

ARGUMENT ...................................................................................................................5

I.      Plaintiff's Claims Should Be Dismissed Because She Fails to Plausibly Allege A False or
        Misleading Statement..............................................................................................5

        A.      Plaintiff fails to plausibly allege that consumers expect Febreze to "physically
                destroy" odor molecules. ...........................................................................6

        B.      Plaintiff fails to plausibly allege that consumers expect Febreze to reduce odor
                levels to zero in all scenarios. ....................................................................8

II.     Plaintiff's GBL Claims Should Be Dismissed....................................................12

III.    Plaintiff's "State Consumer Fraud Acts" Claim Should Be Dismissed.............14

IV.     Plaintiff's Warranty Claims Should Be Dismissed............................................16

        A.      The express warranty claim suffers from several defects.....................16

        B.      The implied warranty claim suffers from several defects.....................18

        C.      The Magnuson-Moss Warranty Act claim suffers from several defects. ..............19

V.      Plaintiff's Fraud Claim Should Be Dismissed. ..................................................20

VI.     Plaintiff's Negligent Misrepresentation Claim Should Be Dismissed..............21

VII.    Plaintiff's Unjust Enrichment Claim Should Be Dismissed. .............................23

CONCLUSION....................................................................................................................23

34588970.v1

## TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*,
 404 F.3d 566 (2d Cir. 2005)..........................................................................21

*In re Aftermarket Auto. Lighting Prod. Antitrust Litig.*,
 2009 WL 9502003 (C.D. Cal. July 6, 2009) ........................................................16

*Allen v. United States*,
 588 F. Supp. 247 (D. Utah 1984) ........................................................................3

*In re Aluminum Warehousing Antitrust Litig.*,
 833 F.3d 151 (2d Cir. 2016)..............................................................................15

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009)...............................................................................4, 8, 15

*Baldwin v. Star Sci., Inc.*,
 2016 WL 397290 (N.D. Ill. Feb. 2, 2016) ............................................................18

*Baron v. Pfizer, Inc.*,
 840 N.Y.S.2d 445 (App. Div. 2007) ....................................................................13

*Barton v. Pret A Manger (USA) Ltd.*,
 535 F. Supp. 3d 225 (S.D.N.Y. 2021)..................................................................17

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007)...............................................................................4, 8, 15

*Bennett v. United States Tr. Co.*,
 770 F.2d 308 (2d Cir. 1985)..............................................................................17

*Bowling v. Johnson & Johnson*,
 65 F. Supp. 3d 371 (S.D.N.Y. 2014)....................................................................19

*Buetow v. A.L.S. Enterprises, Inc.*,
 650 F.3d 1178 (8th Cir. 2011) .....................................................................1, 9, 10

*Buetow v. A.L.S. Enterprises, Inc.*,
 713 F. Supp. 2d 832 (D. Minn. 2010)....................................................................9

*Chiste v. Hotels.com L.P.*,
 756 F. Supp. 2d 382 (S.D.N.Y. 2010)....................................................................7

*Chufen Chen v. Dunkin' Brands, Inc.*,
 954 F.3d 492 (2d Cir. 2020)..........................................................................5, 12

34588970.v1

*Colpitts v. Blue Diamond Growers*,
    527 F. Supp. 3d 562 (S.D.N.Y. 2021) ................................................................18, 19

*Cosgrove v. Oregon Chai, Inc.*,
    520 F. Supp. 3d 562 (S.D.N.Y. 2021) ...............................................................22

*DaCorta v. AM Retail Grp., Inc.*,
    2018 WL 557909 (S.D.N.Y. Jan. 23, 2018) .....................................................14

*Dallas Aerospace, Inc. v. CIS Air Corp.*,
    352 F.3d 775 (2d Cir. 2003) .............................................................................21

*Daniel v. Tootsie Roll Indus., LLC*,
    2018 WL 3650015 (S.D.N.Y. Aug. 1, 2018) .....................................................7

*Dash v. Seagate Tech. (U.S.) Holdings, Inc.*,
    27 F. Supp. 3d 357 (E.D.N.Y. 2014) ...........................................................13, 21

*Duran v. Henkel of Am., Inc.*,
    450 F. Supp. 3d 337 (S.D.N.Y. 2020) ..............................................................13

*Ebin v. Kangadis Food Inc.*,
    2013 WL 3936193 (S.D.N.Y. July 26, 2013) ...................................................20

*Eckler v. Wal-Mart Stores, Inc.*,
    2012 WL 5382218 (S.D. Cal. Nov. 1, 2012) ....................................................11

*Eidelman v. Sun Prods. Corp.*,
    2022 WL 1929250 (2d Cir. June 6, 2022) ........................................................14

*Fed. Treasury Enter. Sojuzplodoimport v. SPI Spirits Ltd.*,
    726 F.3d 62 (2d Cir. 2013) ...............................................................................15

*Fero v. Excellus Health Plan, Inc.*,
    236 F. Supp. 3d 735 (W.D.N.Y. 2017) .............................................................21

*Fin. Guar. Ins. Co. v. Putnam Advisory Co.*,
    783 F.3d 395 (2d Cir. 2015) ...........................................................................5, 20

*Fink v. Time Warner Cable*,
    714 F.3d 739 (2d Cir. 2013) ..............................................................................5

*Gaidon v. Guardian Life Ins. Co. of Am.*,
    94 N.Y.2d 330 (1999) ........................................................................................5

*Gaul v. Bayer Healthcare LLC*,
    2013 WL 12181778 (D.N.J. Feb. 11, 2013) .....................................................11

iii

*Gavilanes v. Gerber Prod. Co.*,
   2021 WL 5052896 (E.D.N.Y. Nov. 1, 2021)..................................................................20

*Glover v. Bob's Disc. Furniture, LLC*,
   --- F. Supp. 3d ---, 2022 WL 3353454 (S.D.N.Y. Aug. 12, 2022) ..........................20

*Gordon v. Target Corp.*,
   2022 WL 836773 (S.D.N.Y. Mar. 18, 2022) ..................................................................17

*Goshen v. Mut. Life Ins. Co. of N.Y.*,
   98 N.Y.2d 314 (2002) ....................................................................................................5, 12

*Gould v. Helen of Troy Ltd.*,
   2017 WL 1319810 (S.D.N.Y. Mar. 30, 2017) ................................................................18

*Grossman v. Simply Nourish Pet Food Co.*,
   516 F. Supp. 3d 261 (E.D.N.Y. 2021) ...........................................................................17

*Hardy v. Ole Mexican Foods, Inc.*,
   2022 WL 2906395 (W.D.N.Y. July 21, 2022)...................................................................6

*Hesse v. Godiva Chocolatier, Inc.*,
   463 F. Supp. 3d 453 (S.D.N.Y. 2020)............................................................................5, 21

*Housey v. Procter & Gamble Co.*,
   2022 WL 874731 (S.D.N.Y. Mar. 24, 2022) ................................................................8, 12

*In re HSBC Bank, USA, N.A., Debit Card Overdraft Fee Litig.*,
   1 F. Supp. 3d 34 (E.D.N.Y. 2014) ..................................................................................16

*Hu v. Herr Foods, Inc.*,
   2017 WL 11551822 (E.D. Pa. Sept. 26, 2017) ..............................................................13

*Hughes v. Ester C Co.*,
   930 F. Supp. 2d 439 (E.D.N.Y. 2013) ...........................................................................11

*Hume v. Lines*,
   2016 WL 1031320 (W.D.N.Y. Mar. 8, 2016)...............................................................17

*Indus. Tech. Ventures, L.P. v. Pleasant T. Rowland Revocable Trust*,
   280 F.R.D. 86 (W.D.N.Y. 2012)....................................................................................20

*Izquierdo v. Mondelez Int'l, Inc.*,
   2016 WL 6459832 (S.D.N.Y. Oct. 26, 2016) ..............................................................14, 21

*Jessani v. Monini N. Am., Inc.*,
   744 F. App'x 18 (2d Cir. 2018) .....................................................................................6, 10

iv

*In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*,
  383 F. Supp. 3d 187 (S.D.N.Y. 2019) ....................................................................................23

*Lerner v. Fleet Bank, N.A.*,
  459 F.3d 273 (2d Cir. 2006) ...............................................................................................20

*Lugones v. Pete & Gerry's Organic, LLC*,
  440 F. Supp. 3d 226 (S.D.N.Y. 2020) ...................................................................5, 8, 17, 18

*Marshall v. Hyundai Motor Am.*,
  334 F.R.D. 36 (S.D.N.Y. 2019) ...........................................................................................13

*McCracken v. Verisma Sys., Inc.*,
  2022 WL 3566682 (W.D.N.Y. Aug. 18, 2022) ....................................................................23

*Moyer v. IBM Corp.*,
  2003 WL 256931 (S.D.N.Y. Feb. 3, 2003) ............................................................................7

*Nicosia v. Amazon.com, Inc.*,
  834 F.3d 220 (2d Cir. 2016) .................................................................................................4

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*,
  85 N.Y.2d 20 (1995) ............................................................................................................5

*Prickett v. New York Life Ins. Co.*,
  896 F. Supp. 2d 236 (S.D.N.Y. 2012) ..................................................................................21

*Quintana v. B. Braun Med. Inc.*,
  2018 WL 3559091 (S.D.N.Y. July 24, 2018) .........................................................................8

*R.R. Donnelley & Sons Co. v. Marino*,
  2021 WL 4441515 (W.D.N.Y. Sept. 28, 2021) ....................................................................23

*Robainas v. Metro. Life Ins. Co.*,
  2015 WL 5918200 (S.D.N.Y. Oct. 9, 2015) .........................................................................15

*Rodriguez v. Hanesbrands Inc.*,
  2018 WL 2078116 (E.D.N.Y. Feb. 20, 2018) .......................................................................21

*Rodriguez v. It's Just Lunch Int'l*,
  2018 WL 3733944 (S.D.N.Y. Aug. 6, 2018) ...................................................................13, 14

*Sarr v. BEF Foods, Inc.*,
  2020 WL 729883 (E.D.N.Y. Feb. 13, 2020) .........................................................................10

*Sathue v. Mir Vest Inc.*,
  2019 WL 1596878 (W.D.N.Y. Apr. 15, 2019) ....................................................................6, 7

v

*Sibrian v. Cento Fine Foods, Inc.*,
2020 WL 3618953 (E.D.N.Y. July 2, 2020) ................................................................10

*Singleton v. Fifth Generation, Inc.*,
2016 WL 406295 (N.D.N.Y. Jan. 12, 2016) ................................................................17

*Small v. Lorillard Tobacco Co.*,
94 N.Y.2d 43 (1999) ................................................................................................13

*Solak v. Hain Celestial Group, Inc.*,
2018 WL 1870474 (N.D.N.Y. Apr. 17, 2018) ................................................................7

*Travelers Cas. & Sur. Co. v. Dormitory Auth.-State of New York*,
734 F. Supp. 2d 368 (S.D.N.Y. 2010) ................................................................22

*In re Trilegiant Corp.*,
2014 WL 1315244 (D. Conn. Mar. 28, 2014) ................................................................15

*Trisvan v. Regal Ent. Grp.*,
2021 WL 620981 (E.D.N.Y. Feb. 17, 2021) ................................................................19

*Warren v. Whole Foods Mkt. Grp., Inc.*,
574 F. Supp. 3d 102 (E.D.N.Y. 2021) ................................................................22

*Weinstein v. eBay, Inc.*,
819 F. Supp. 2d 219 (S.D.N.Y. 2011) ................................................................8

*Weisblum v. Prophase Labs, Inc.*,
88 F. Supp. 3d 283 (S.D.N.Y. 2015) ................................................................22

*Zottola v. Eisai Inc.*,
2021 WL 4460563 (S.D.N.Y. Sept. 29, 2021) ................................................................19

**Statutes**

15 U.S.C. § 2301(6) ................................................................................................19

15 U.S.C. § 2310(d)(3) ................................................................................................19, 20

Idaho Code Ann. § 48-602(2) ................................................................................................16

N.Y. U.C.C. § 2-607(3)(a) ................................................................................................17

**Other Authorities**

*Eliminate*, Dictionary.com, https://www.dictionary.com/browse/eliminate ................................................................9

Nat'l Geographic, *The Conservation of Matter During Physical and Chemical Changes*, https://education.nationalgeographic.org/resource/conservation-matter-during-physical-and-chemical-changes (last updated June 2, 2022)............................2

34588970.v1

## INTRODUCTION

Defendant The Procter & Gamble Company ("P&G") markets Febreze, a trusted household air freshener that has been used by consumers for more than 20 years.  Although Febreze is one of the most popular brands of air fresheners in the market, Plaintiff Rosalie Pijacki bought this putative class action alleging that Febreze does not work as advertised because it fails to "eliminate odors."  Plaintiff alleges that the phrase "eliminates odors" displayed on the label of Febreze is false and misleading because the product cannot "physically destroy" odor molecules or reduce the level of all odors to zero under all circumstances.

All of Plaintiff's claims should be dismissed because her interpretation of the phrase "eliminates odors" defies common sense.  Consumers understand that air fresheners like Febreze work by significantly reducing unpleasant odors in a household setting.  Plaintiff nevertheless alleges that a reasonable consumer would believe that Febreze "physically destroys" odor molecules or eliminates all odors when sprayed, no matter the situation.  But it is scientifically *impossible* for a product to "physically destroy" molecules, and a federal appellate court has squarely rejected the notion that there are consumers "so scientifically unsophisticated as to believe that any product can 'eliminate' every molecule of . . . odor."  *Buetow v. A.L.S. Enterprises, Inc.*, 650 F.3d 1178, 1186 (8th Cir. 2011).  Plaintiff's claims should be dismissed for those reasons.

Even if Plaintiff's extreme interpretation of the phrase "eliminates odors" were accepted, the Complaint should be dismissed on numerous other grounds.  Plaintiff's claims under New York's General Business Law ("GBL") fail because Plaintiff does not plead that she suffered an injury from Febreze's use of the phrase "eliminates odors."  The claims for violations of five "State Consumer Fraud Acts" fail because Plaintiff makes no attempt to allege the elements of those claims or demonstrate that, as a New York resident, she has the right to sue under the laws of states other than New York.  The warranty claims should be dismissed because Plaintiff did not provide

1

timely pre-suit notice of the claims, purchase Febreze directly from P&G, or satisfy several other prerequisites for warranty claims.  And the facts alleged in the Complaint fall well short of sustaining any of Plaintiff's tag-along common law claims for fraud, negligent misrepresentation, or unjust enrichment.

For these reasons and the additional reasons below, the Complaint should be dismissed.

## BACKGROUND

P&G markets aerosol air fresheners under the Febreze brand.  Compl. ¶ 1.  Like many air fresheners, the label of Febreze states that it "eliminates odors."  *Id.*[1]  Plaintiff acknowledges that the active ingredient in Febreze "envelops and sequesters" bad smells, "reducing their release into the air and thus the perception of malodor."  *Id.* ¶¶ 9–10.  Plaintiff nonetheless contends that Febreze cannot "eliminate odors" for two reasons:  (1) the product does not work "at the molecular level by physically destroying the odor molecules," or (2) the product cannot reduce all odors to undetectable levels when used in all situations.  *Id.* ¶¶ 5–6.  In other words, Plaintiff takes issue with the *level* of achievable odor reduction, asserting that Febreze is falsely advertised unless it reduces odor levels to zero through physical destruction of odor molecules.  *See id.* ¶ 10.

Plaintiff's "physical destruction" claim runs counter to a fundamental principle of science. The law of conservation of mass—a principle taught in high school science classes—provides that molecules "can change form through physical and chemical changes," but "[t]he same amount of matter exists before and after the change—none is created or destroyed."  Nat'l Geographic, *The*

---

[1]     *See, e.g.*, *Room Sprays*, Air Wick, https://www.airwick.us/products/room-spray (last visited Oct. 26, 2022) (Air Wick room sprays "[e]lliminate odors"); *Glade Room Spray Odor Eliminator and Air Freshener*, Amazon, https://www.amazon.com/Glade-Spray-Eliminator-Freshener-Cinnamon/dp/B0018CC8YA (last visited Oct. 26, 2022) (Glade spray "eliminates odors & freshens the air"); *Odor Eliminating Sprays*, Fresh Wave, https://www.freshwaveworks.com/odor-eliminating-sprays/c/47 (last visited Oct. 26, 2022) (Fresh Wave sprays "eliminate and remove odors").

2

*Conservation    of    Matter    During    Physical    and    Chemical    Changes*, https://education.nationalgeographic.org/resource/conservation-matter-during-physical-and-chemical-changes (last updated June 2, 2022); *see also Allen v. United States*, 588 F. Supp. 247, 279 (D. Utah 1984) ("Mention has already been made of the Laws of Conservation of Mass and Energy—the concepts that in any chemical reaction the total mass of the system remains constant . . . . [N]either matter nor energy is created or destroyed in any reaction."), *rev'd on other grounds*, 816 F.2d 1417 (10th Cir. 1987).  It is therefore scientifically *impossible* for Febreze to "physically destroy" odor molecules in the manner suggested by Plaintiff.

Plaintiff's claim that consumers expect Febreze to reduce *all* odors to zero is equally puzzling.  As an example, the Complaint describes a study in which Febreze was sprayed in a microwave after bacon was microwaved.  Compl. ¶ 25.  Plaintiff alleges that, according to that study, Febreze purportedly failed to "reduce the perception" of bacon smell "to be undetectable." *Id.* ¶¶ 10, 28 ("The results were that ordinary consumers determined the Product did not reduce the subject malodors to undetectable levels.").  The Complaint does not contain any facts indicating that consumers, including Plaintiff, use Febreze in this unusual fashion—*i.e.*, spraying a microwave immediately after food is microwaved.  Nor are there any facts suggesting that consumers understand the phrase "eliminates odors" to mean that it can eliminate all smells on contact, no matter how extreme the situation.

Even Plaintiff does not allege that she attempted to use Febreze in the manner described by the study.  Instead, the only allegation in the Complaint about Plaintiff's experience with Febreze is contained in a single conclusory sentence:  "Plaintiff was disappointed with the Product because it failed to eliminate odors when she used it in areas of malodor."  *Id.* ¶ 50.  But there are no accompanying allegations describing how Plaintiff used Febreze, what odor she attempted to

eliminate, or why she expected to Febreze to "physically destroy" all odor molecules.  Plaintiff nonetheless asserts that she "paid more for the Product than she otherwise would have paid had she known the truth."  *Id.* ¶ 31.

Based on that purported injury, Plaintiff asserts class action claims for violation of Sections 349 and 350 of the New York GBL, *id.* ¶¶ 63–68; violation of the unidentified "State Consumer Fraud Acts" of New Mexico, Utah, Montana, Idaho, and Alaska, *id.* ¶ 56, 69–72; breaches of express warranty, implied warranty of merchantability/fitness for a particular purpose, and the Magnuson-Moss Warranty Act ("MMWA"), *id.* ¶¶ 73–87; negligent misrepresentation, *id.* ¶¶ 88–94; fraud, *id.* ¶¶ 95–100; and unjust enrichment, *id.* ¶ 101.  These claims are brought on behalf of "[a]ll persons" in New York, New Mexico, Utah, Montana, Idaho, and Alaska "who purchased the Product."  *Id.* ¶ 56.

## PROCEDURAL STANDARD

"To survive a motion to dismiss," a complaint must "state a claim to relief that is plausible on its face," *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)), "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense," *Iqbal*, 556 U.S. at 679.  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.* (quoting *Twombly*, 550 at 557).  Instead, "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  This standard is intended to expose pleading deficiencies "at the point of minimum expenditure of time and money by the parties and the court."  *Id.* at 558 (quotation omitted).

**ARGUMENT**

**I.    Plaintiff's Claims Should Be Dismissed Because She Fails to Plausibly Allege A False or Misleading Statement.**

All of Plaintiff's claims face a threshold problem:  the Complaint alleges no facts suggesting that the phrase "eliminates odors" used on the labels of Febreze is false or misleading to consumers.

Under New York law, all of Plaintiff's claims require allegations that a defendant made a false, misleading, or inaccurate statement.  *See Chufen Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 500 (2d Cir. 2020) (GBL § 349 claim); *Goshen v. Mut. Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 324 n.1 (2002) (GBL § 350 claim); *Lugones v. Pete & Gerry's Organic, LLC*, 440 F. Supp. 3d 226, 244 (S.D.N.Y. 2020) (warranty claim); *Fin. Guar. Ins. Co. v. Putnam Advisory Co.*, 783 F.3d 395, 402 (2d Cir. 2015) (fraud claim).[2]  For purposes of a GBL and warranty claim, a false or misleading statement is one that is "likely to mislead a reasonable consumer acting reasonably under the circumstances."  *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 26 (1995); *see also Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp. 3d 453, 469 (S.D.N.Y. 2020).  Fraud, however, requires an actual false statement—and "[a] practice may carry the capacity to mislead or deceive a reasonable person but not be fraudulent."  *Gaidon v. Guardian Life Ins. Co. of Am.*, 94 N.Y.2d 330, 348 (1999).  "It is well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer."  *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013); *see also Hardy v. Ole*

---

[2]    In addition to New York, Plaintiff also asserts class action claims under five other state consumer protection laws.  *See* Compl. ¶¶ 69–72.  But if Plaintiff fails to plead her individual claim under New York law, the remaining class claims under other state laws likewise should be dismissed.

*Mexican Foods, Inc.*, 2022 WL 2906395, at *2 (W.D.N.Y. July 21, 2022) (Sinatra, J.) ("The Court may resolve [whether an advertisement is misleading] on a motion to dismiss.").

The Complaint asserts that the phrase "eliminates odors" on the label of Febreze is false and misleading in two distinct ways, each as implausible as the next.  First, Plaintiff alleges that consumers understand "eliminates odors" to mean that Febreze somehow eradicates odors "at the molecular level by physically destroying the odor molecules."  Compl. ¶ 5.  Second, Plaintiff claims that consumers also understand "eliminates odors" to mean that Febreze reduces *all* "malodorous molecules to a level where odor is not detectable" in *all* situations.  *Id.*  The Complaint does not contain facts sufficient to support either theory.

### A.    Plaintiff fails to plausibly allege that consumers expect Febreze to "physically destroy" odor molecules.

Plaintiff's first theory of deception defies common sense:  she alleges that, even if Febreze completely "envelops and sequesters" odor where the product is sprayed, the phrase "eliminates odors" is still misleading because Febreze does not actually "physically destroy" the underlying molecules that produce odors.  Compl. ¶¶ 3, 5, 9.  No consumer—let alone a reasonable one—would interpret "eliminates odors" in such a puzzling manner.

To survive a motion to dismiss in a false advertising case, "[p]laintiffs must do more than plausibly allege that a label might conceivably be misunderstood by some few consumers. Plaintiffs must plausibly allege that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Sathue v. Mir Vest Inc.*, 2019 WL 1596878, at *4 (W.D.N.Y. Apr. 15, 2019) (quotation omitted); *Jessani v. Monini N. Am., Inc.*, 744 F. App'x 18, 19 (2d Cir. 2018) (summary order) (same).  "Although a representation need not be false to mislead a reasonable consumer, the representation must nevertheless be misleading or ha[ve] the capacity, likelihood or tendency to deceive or confuse

members of the public." *Solak v. Hain Celestial Group, Inc.*, 2018 WL 1870474, at *4 (N.D.N.Y. Apr. 17, 2018) (internal quotation mark omitted).  A court must "view each allegedly misleading statement in light of its context on the product label or advertisement as a whole" to determine whether a reasonable consumer is likely to have been deceived.  *Id.* at *3.  In doing so, the Court may take judicial notice of "[m]atters of well-established scientific fact."  *Moyer v. IBM Corp.*, 2003 WL 256931, at *2 (S.D.N.Y. Feb. 3, 2003).

Here, Plaintiff contends that the phrase "eliminates odors" on the label of Febreze deceives a "significant portion of the general consuming public" into believing that the product "physically destroys" odor molecules.  *See Sathue*, 2019 WL 1596878, at *4.  As explained above, however, it is scientifically impossible for molecules to be destroyed:  molecules can only be changed, but cannot be created or destroyed.  *Supra* at 2–3.  Plaintiff's claim is therefore based on the contention that consumers interpret the label of Febreze in a manner that runs counter to an elementary scientific principle.  This "argument attributes to consumers a level of stupidity that the Court cannot countenance and that is not actionable."  *Chiste v. Hotels.com L.P.*, 756 F. Supp. 2d 382, 404 (S.D.N.Y. 2010); *see also Daniel v. Tootsie Roll Indus., LLC*, 2018 WL 3650015, at *13 (S.D.N.Y. Aug. 1, 2018) ("The Court declines to enshrine into the law an embarrassing level of mathematical illiteracy.").

A simple example underscores why Plaintiff's interpretation of the label is facially implausible.  Imagine that a consumer purchased Febreze to remove pet odors in her home and she finds that Febreze did, in fact, remove the smell of pet odors when sprayed.  *See* Compl. ¶ 9 (acknowledging that Febreze "envelops and sequesters" odors).  Although the consumer would be fully satisfied with Febreze, Plaintiff speculates that the consumer is still deceived because Febreze failed to remove pet odors "by physically destroying the odor molecules"—even though it is

scientifically impossible for that occur.  *Id.* ¶ 5.  There is nothing on the label of Febreze to support that extreme interpretation.  *See also Weinstein v. eBay, Inc.*, 819 F. Supp. 2d 219, 228 (S.D.N.Y. 2011) ("[T]he applicable legal standard is whether a reasonable consumer, not the least sophisticated consumer, would be misled by Defendants' actions.").

Apparently recognizing that the label itself contains no promise that Febreze will "physically destroy" odor molecules, Plaintiff tries to bolster her claim with vague references to unspecified "[c]ommercials" and a statement on "[t]he Product's website."  Compl. ¶¶ 3–4.  These types of "'naked assertion[s]' devoid of 'further factual enhancement'" have no weight at the pleadings stage.  *Iqbal*, 556 U.S. at 681 (quoting *Twombly*, 550 U.S. at 557).  Moreover, even if Plaintiff identified statements implying that Febreze "physically destroys" odor molecules, it is well settled that "[p]laintiffs must allege that they saw the misleading statements of which they complain before they purchased or came into possession of" the challenged product.  *Lugones*, 440 F. Supp. 3d at 240.  Here, Plaintiff never alleges that she ever saw any commercials or reviewed the Febreze website, let alone that she did so before purchasing Febreze.  Compl. ¶ 52 (alleging that Plaintiff relied only on the label's statement that Febreze "Eliminates Odors").  Plaintiff thus cannot sustain a false advertising claim by citing to commercials and a website "she never saw." *Housey v. Procter & Gamble Co.*, 2022 WL 874731, at *3 (S.D.N.Y. Mar. 24, 2022); *see also Quintana v. B. Braun Med. Inc.*, 2018 WL 3559091, at *8, *10 (S.D.N.Y. July 24, 2018) (dismissing deceptive advertising claims because plaintiffs failed to allege that they viewed defendants' website).

**B.      Plaintiff fails to plausibly allege that consumers expect Febreze to reduce odor levels to zero in all scenarios.**

Plaintiff's second theory of deception is equally defective.  The Complaint readily admits that Febreze effectively "envelops and sequesters" odors, "reducing their release into the air and

thus the perception of malodor."  Compl. ¶ 9.  Plaintiff nevertheless claims that consumers are misled because the phrase "eliminates odors" implies that Febreze reduces the level of *all* odors to *zero* in *all* circumstances.  *Id.* ¶¶ 5, 10, 28.  That theory should be rejected for two reasons:  (1) Plaintiff's absolutist interpretation of the phrase "eliminates odors" is implausible and has already been rejected by a federal appellate court, and (2) Plaintiff fails to allege actual facts indicating that it is impossible for Febreze to eliminate *all* odors.

*First*, Plaintiff's claims fail at the outset because no consumer would believe that Febreze promises to eliminate every trace of odor, no matter the kind and no matter the situation.  The word "eliminate" is defined as "to remove or get rid of, especially as being in some way undesirable: to eliminate risks; to eliminate hunger."  *Eliminate*, Dictionary.com, https://www.dictionary.com/browse/eliminate.  In the context of air fresheners, then, "eliminates odors" means no more than the ability to "remove or get rid of" the perception of bad smells.  That explains why so many air fresheners are marketed using the phrase "eliminates odors."  *See supra* at 2 n.1.

Plaintiff's theory, by contrast, takes the extreme view that no air freshener can be advertised as being able to "eliminate odors" unless it reduces the level of all odors to zero—all of the time. There are no facts pled in the Complaint to support that view, and the Eighth Circuit has rejected it.  *See Buetow*, 650 F.3d at 1186–87.  In *Buetow*, the plaintiff alleged that the defendant violated state consumer fraud statutes by falsely advertising its hunting garments as containing "odor eliminating technology."  *Id.* at 1181–82.  The district court held that the phrase "odor eliminating," without qualification, implied that the garments would achieve *complete* removal of all odors.  *See Buetow v. A.L.S. Enterprises, Inc.*, 713 F. Supp. 2d 832, 839–40 (D. Minn. 2010). The Eighth Circuit reversed, holding that "[w]e doubt there are many hunters so scientifically unsophisticated as to believe that any product can 'eliminate' every molecule of human odor."

*Buetow*, 650 F.3d at 1186.  Thus, although the "garments were incapable of adsorbing every single molecule of odor," no reasonable consumer would give "the most absolute" meaning to the word "eliminate."  *Id.*  Similarly, here, it is implausible to think that any consumer would believe that Febreze promises to "'eliminate' every molecule of . . . odor."  *Id.*; *see also Sibrian v. Cento Fine Foods, Inc.*, 2020 WL 3618953, at *4 (E.D.N.Y. July 2, 2020) (dismissing GBL claims when a court "concludes, drawing upon common sense and common experience, that the vast majority of reasonable consumers expect no such thing").

The Complaint's reference to a study involving microwaved bacon underscores the implausibility of Plaintiff's theory.  Compl. ¶ 25.  Plaintiff complains that the Febreze was sprayed inside a microwave after bacon was microwaved and "did not reduce the subject malodors to undetectable levels."  *Id.* ¶ 28.  Under Plaintiff's logic, a consumer would understand the phrase "eliminates odors" on the label of Febreze to mean that it can miraculously make all bacon smell disappear from a microwave on contact.  No purchaser of Febreze would rationally expect it to be able to eradicate all smells from a microwave immediately after microwaving bacon—or "physically destroy" all molecules producing the bacon smell—and the Complaint contains no well-pled factual allegations suggesting that consumers interpret the label in such a manner.  *See Jessani*, 744 F. App'x at 19 (affirming dismissal of false-advertising claim on ground that "it is simply not plausible that a significant portion of the general consuming public acting reasonably would conclude that Monini's mass produced, modestly-priced olive oil was made with [expensive truffles]"); *Sarr v. BEF Foods, Inc.*, 2020 WL 729883, at *5 (E.D.N.Y. Feb. 13, 2020) ("[N]o reasonable consumer would read the phrase 'farm-fresh goodness' and believe that the Mashed Potatoes arrived freshly from a farm; mashed potatoes is a cooked dish and obviously requires some amount of processing . . . .").

10

*Second*, even if Plaintiff's unreasonable interpretation of "eliminates odors" were accepted, Plaintiff's claims run into another independent defect:  she does not allege that it is impossible for Febreze to reduce odors to undetectable levels on contact.  On the contrary, the Complaint contains allegations that show Febreze *does* eliminate odors even under Plaintiff's own interpretation of the phrase.  For example, Plaintiff concedes that a study with "trained sensory panelists" found that Febreze reduced odors to undetectable levels in 20% of cases.  Compl. ¶¶ 16, 22–23.  The fact that Febreze rendered odors wholly undetectable in 20% of cases confirms that Febreze "eliminates" odors even in the way Plaintiff interprets the phrase.

To side-step her own admissions, Plaintiff alleges that the supporting studies are "flawed" and there is "no credible scientific evidence" demonstrating that Febreze can eliminate all bad odors under all circumstances.  *E.g.*, Compl. ¶¶ 10, 13, 19.  It is well settled, however, that "the simple allegation that a given statement is unsubstantiated or unsupported by scientific evidence, standing alone, will not be enough for purposes of showing a deceptive or fraudulent representation."  *Hughes v. Ester C Co.*, 930 F. Supp. 2d 439, 455–59 (E.D.N.Y. 2013) (surveying cases).  As one court has explained, "[t]here is a difference, intuitively, between a claim that has no evidentiary support one way or the other and a claim that's actually been disproved.  In common usage, we might say that both are 'unsubstantiated,' but caselaw (and common sense) imply that in the context of a false advertising lawsuit an 'unsubstantiated' claim is only the former."  *Eckler v. Wal-Mart Stores, Inc.*, 2012 WL 5382218, at *3 (S.D. Cal. Nov. 1, 2012).  Plaintiff's criticisms of the supposed lack of supporting scientific evidence are thus insufficient to survive a motion to dismiss.  *See also Gaul v. Bayer Healthcare LLC*, 2013 WL 12181778, at *1 (D.N.J. Feb. 11, 2013) ("Plaintiffs have a crucial gap in their logic: how does the unreliability of Bayer's study

provide a factual basis for the conclusion that the labeling claims are false?  That a research study may be unreliable does not mean that its conclusions are necessarily incorrect.").

Finally, Plaintiff cannot salvage her claims by relying on her own purported experience with Febreze.  The sum total of Plaintiff's experience with the product is contained in the following, conclusory sentence:  "Plaintiff was disappointed with the Product because it failed to eliminate odors when she used it in areas of malodor."  Compl. ¶ 50.  The Complaint does not explain how or when, or over what period of time, Plaintiff determined that Febreze did not eliminate odors.  There is simply no detail about Plaintiff's purported use of Febreze, let alone any nexus between the phrase "eliminates odors" and her own experience using the product.  This is an independent basis for dismissal.  *See Housey*, 2022 WL 874731, at *8 (conclusory allegations regarding plaintiff's personal experience with the product insufficient to survive a motion to dismiss).

## II.     **Plaintiff's GBL Claims Should Be Dismissed.**

To assert a claim under New York's GBL for deceptive trade practices (GBL § 349) or false advertising (GBL § 350), Plaintiff must plead that P&G's actions (1) were consumer-oriented, (2) were materially misleading, and (3) caused her an injury.  *See Chufen Chen*, 954 F.3d at 500; *Goshen*, 98 N.Y.2d at 324 n.1.  As explained above, the GBL claims should be dismissed because Plaintiff fails to allege that the phrase "eliminates odors" on the label of Febreze products is misleading to consumers.

Plaintiff's GBL claims should be dismissed for a second, independent reason:  the Complaint fails to allege that Plaintiff suffered an "actual injury" from her purchase of Febreze.  The Complaint relies on two alleged theories of injury:  (1) Plaintiff was injured by the full purchase price of Febreze because she purportedly "would not have purchased the Product if she knew the representations were false and misleading," Compl. ¶¶ 53–54; and (2) Plaintiff paid a

12

"premium" for Febreze because of P&G's statement that the product "eliminates odors," *id.* ¶¶ 32, 55.  Neither theory is viable.

As to the first theory of injury, New York courts have rejected the idea that "consumers who buy a product that they would not have purchased, absent a manufacturer's deceptive commercial practices, have suffered an injury under General Business Law § 349." *Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43, 56, (1999).  Accordingly, although Plaintiff seeks a full refund of the purchase price of Febreze, *see* Compl. ¶ 53, it is "well-settled" that a consumer "whose purchase was allegedly procured through deception" cannot recover "a refund of the price" under GBL §§ 349 and 350, *Dash v. Seagate Tech. (U.S.) Holdings, Inc.*, 27 F. Supp. 3d 357, 361–62 (E.D.N.Y. 2014).  This is because "deceived consumers may nevertheless receive—and retain the benefits of—something of value, even if it is not precisely what they believed they were buying." *Id.*; *see also Rodriguez v. It's Just Lunch Int'l*, 2018 WL 3733944, at *5 (S.D.N.Y. Aug. 6, 2018) (in GBL and fraud case, "[a] full refund is not . . . a tenable model of damages under the benefit-of-the-bargain rule"); *Hu v. Herr Foods, Inc.*, 2017 WL 11551822, at *2 n.2 (E.D. Pa. Sept. 26, 2017) (a claim that consumers were "injured in the amount of the entire 'purchase price' fails as a matter of law" under GBL § 349); *Baron v. Pfizer, Inc.*, 840 N.Y.S.2d 445, 448 (App. Div. 2007) (plaintiff's allegation that she would not have purchased the product absent deceptive practices did not state a "cognizable injury").

As to the second theory of injury, "[p]laintiffs alleging a 'price premium' theory must do more than merely allege that they paid a premium price for their product." *Marshall v. Hyundai Motor Am.*, 334 F.R.D. 36, 59 (S.D.N.Y. 2019) (cleaned up).  Instead, "a plaintiff must allege not only that defendants charged a price premium, but also that there is a 'connection between the misrepresentation'" and the alleged "price premium." *Duran v. Henkel of Am., Inc.*, 450 F. Supp.

3d 337, 350 (S.D.N.Y. 2020) (citation omitted); *see also Eidelman v. Sun Prods. Corp.*, 2022 WL 1929250, at *2 (2d Cir. June 6, 2022) ("The central question therefore is whether the higher price can be attributed, in whole or in part, to that advertising statement.").

Here, however, the Complaint offers little more than the conclusory assertion that P&G could sell Febreze "for a price premium compared to other similar products" by including the phrase "eliminates odors" on the label.  Compl. ¶¶ 30, 32.  There are no allegations, for example, describing the amount of the purported premium or explaining how the phrase "eliminates odors" allowed P&G to charge more than other air fresheners that do not use that phrase.  Indeed, the Complaint acknowledges that the active ingredient in Febreze "reduc[es] . . . the perception of malodor," *id.* ¶¶ 8–9, and Plaintiff nowhere alleges that the phrase "eliminates odors" permits P&G to charge a premium over a phrase like "reduces odors."  Plaintiff's GBL claims should therefore be dismissed because she does not allege that she "paid a *higher* price for [Febreze] than [she] otherwise would have, absent deceptive acts."  *Izquierdo v. Mondelez Int'l, Inc.*, 2016 WL 6459832, at *7 (S.D.N.Y. Oct. 26, 2016); *DaCorta v. AM Retail Grp., Inc.*, 2018 WL 557909, at *8 (S.D.N.Y. Jan. 23, 2018) ("Without allegations as to the value, *or the unique quality* for which the premium was paid, there can be no connection between the misrepresentation and the harm from the product."); *Rodriguez*, 2018 WL 3733944, at *5 (rejecting price premium theory where "even the most meticulous comparison of defendants' prices to those of their competitors . . . offer[ed] no way of linking the price difference, if any, to the allegedly unlawful or deceptive [advertising] . . . ." (quotation omitted)).

## III.  Plaintiff's "State Consumer Fraud Acts" Claim Should Be Dismissed.

Plaintiff purports to assert claims under the consumer protection statutes of five states besides New York:  New Mexico, Utah, Montana, Idaho, and Alaska.  Compl. ¶¶ 56, 69–72.  This "claim" is defective for the reasons discussed above—*i.e.*, Plaintiff fails to allege a material

misrepresentation or a cognizable injury.  The non-New York consumer protection claims should be dismissed for two additional reasons.

*First*, Plaintiff has not even attempted to allege how P&G supposedly violated the non-New York consumer protection statutes.  Instead, Plaintiff simply lists the five states whose consumer fraud statutes were supposedly violated, without alleging any particular facts that would support the varying elements of each law.  The Second Circuit has rejected this type of "laundry list" pleading, holding that state consumer protection claims should be dismissed when "[t]he complaint does little more than list a couple dozen state statutes . . . without pleading any of their elements."  *In re Aluminum Warehousing Antitrust Litig.*, 833 F.3d 151, 163 (2d Cir. 2016); *see also In re Trilegiant Corp.*, 2014 WL 1315244, at *35 (D. Conn. Mar. 28, 2014) (dismissing state consumer protection claims where the complaint "merely lists several other states' consumer protection statutes without explaining how those statutes relate to the Defendants' alleged conduct in this case"); *cf. Iqbal*, 556 U.S. at 678 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" (quoting *Twombly*, 550 U.S. at 555)).

*Second*, Plaintiff (a New York resident) lacks statutory standing to assert claims under the non-New York consumer protection laws.  "For statutory standing, the question is whether the plaintiff has a cause of action under the statute."  *Robainas v. Metro. Life Ins. Co.*, 2015 WL 5918200, at *5 (S.D.N.Y. Oct. 9, 2015) (quotation omitted); *see also Fed. Treasury Enter. Sojuzplodoimport v. SPI Spirits Ltd.*, 726 F.3d 62, 72 n.10 (2d Cir. 2013) ("[T]he 'statutory standing' assessment concerns whether '*this* plaintiff has a cause of action under the statute.'" (citation omitted)).  Here, however, the consumer protection statutes of each of the five non-New York states listed in the Complaint provide a cause of action only to residents, persons who are

15

injured within the State, or persons who suffer injuries that are otherwise closely connected to the State.  *See, e.g.*, *In re Aftermarket Auto. Lighting Prod. Antitrust Litig.*, 2009 WL 9502003, at *7–8 (C.D. Cal. July 6, 2009) (claims brought under state consumer protection laws of Alaska, Montana, New Mexico, and Utah should be dismissed where no plaintiffs resided in or claimed to have purchased products in those states); Idaho Code Ann. § 48-602(2) (defining "trade" and "commerce" to include the advertising and sale of goods "either to or from locations within the state of Idaho, or directly or indirectly affecting *the people of this state*" (emphasis added)).

Plaintiff thus fails to show that *she* has statutory standing under the non-New York consumer protection laws asserted in the Complaint.  Plaintiff is a citizen of New York and purchased the product in New York.  Compl. ¶¶ 42, 48.  Because she cannot establish she suffered an injury outside of New York, she lacks a cause of action to pursue non-New York statutory claims.  To hold otherwise "would allow Plaintiff to engage in lengthy and expensive discovery with respect to alleged violations of state laws when the Court cannot be certain that any individual suffered an injury under those laws."  *In re HSBC Bank, USA, N.A., Debit Card Overdraft Fee Litig.*, 1 F. Supp. 3d 34, 49–50 (E.D.N.Y. 2014) (dismissing state-law claims asserted by plaintiff who was not a resident of those states).

## IV.   Plaintiff's Warranty Claims Should Be Dismissed.

Plaintiff asserts claims for breach of express warranty, breach of implied warranty, and violation of the MMWA.  *See* Compl. ¶¶ 73–87.  For multiple reasons, each of these claims should be dismissed.

### A.   The express warranty claim suffers from several defects.

To state an express warranty claim, Plaintiff must allege that (1) P&G made a material statement amounting to a warranty; (2) Plaintiff relied on this warranty as a basis for purchasing P&G's products; (3) P&G breached this warranty; and (4) the breach injured Plaintiff.  *See Hume*

*v. Lines*, 2016 WL 1031320, at *5 (W.D.N.Y. Mar. 8, 2016).  As explained above, Plaintiff's express warranty claim should be dismissed because there are no plausible allegations that P&G misled consumers in connection with the phrase "eliminates odors."  *See supra* at 5–12.  The claim should also be dismissed because "[u]nder New York law, breach of warranty damages are usually measured by the benefit of the bargain rule," *Bennett v. United States Tr. Co.*, 770 F.2d 308, 316 (2d Cir. 1985), and Plaintiff fails to allege that she paid any price premium, *see supra* at 13–14.

Plaintiff's express warranty claim should also be dismissed because Plaintiff failed to provide P&G with timely pre-suit notice of the alleged breach, which is a "condition precedent" to any breach of warranty claim.  *Lugones*, 440 F. Supp. 3d at 244–45.  New York law requires a buyer, "within a reasonable time after [s]he discovers or should have discovered any breach," to "notify the seller of breach or be barred from any remedy."  N.Y. U.C.C. § 2-607(3)(a).  To adequately plead the pre-suit notice requirement, a "plaintiff must provide factual allegations— such as the date and method plaintiff sent a pre-suit notice—supporting the contention that she notified defendant of the alleged breach within a reasonable time."  *Grossman v. Simply Nourish Pet Food Co.*, 516 F. Supp. 3d 261, 283 (E.D.N.Y. 2021).  "The primary reason for requiring notice is to give the seller the opportunity to make adjustments or replacements, opportunities to minimize the buyer's loss and reduce the seller's own liability."  *Singleton v. Fifth Generation, Inc.*, 2016 WL 406295, at *12 (N.D.N.Y. Jan. 12, 2016) (quotation omitted).

Plaintiff admits that no such notice was provided here.  Instead, she suggests that the filing of the Complaint itself is sufficient to satisfy the pre-suit notice requirement.  Compl. ¶¶ 82–83. "The weight of authority in this Circuit," however, "does not view a complaint to be by itself sufficient reasonable notice."  *Barton v. Pret A Manger (USA) Ltd.*, 535 F. Supp. 3d 225, 246 (S.D.N.Y. 2021); *see also Gordon v. Target Corp.*, 2022 WL 836773, at *14 (S.D.N.Y. Mar. 18,

17

2022) (rejecting similar allegations as sufficient to satisfy pre-suit notice requirement).  The reason for this rule is obvious.  "Allowing Plaintiffs to provide Defendants with notice of a breach of warranty after Plaintiffs have filed the lawsuit would defeat a principal purpose of the notice requirement discussed above: to allow defendants to 'arm [themselves]' for potential litigation or attempt settlement."  *Baldwin v. Star Sci., Inc.*, 2016 WL 397290, at *10 (N.D. Ill. Feb. 2, 2016).  The same result should be reached here.  *See also Lugones*, 440 F. Supp. 3d at 233 (plaintiff could not add warranty claim in amended complaint when notice of that claim was not provided before a lawsuit was filed).

### B.    The implied warranty claim suffers from several defects.

Plaintiff's implied warranty claim similarly fails for lack of pre-suit notice, as "[t]he U.C.C.'s notice requirement also applies to claims for breach of implied warranty."  *Campbell v. Whole Foods Market Grp., Inc.*, 516 F. Supp. 3d 370, 392 (S.D.N.Y. 2021).  The implied warranty claim should also be dismissed because Plaintiff did not purchase the product directly from P&G, and therefore privity does not exist.  New York "law is clear that, absent any privity of contract between Plaintiff and Defendant, a breach of implied warranty claim cannot be sustained as a matter of law except to recover for personal injuries."  *Gould v. Helen of Troy Ltd.*, 2017 WL 1319810, at *5 (S.D.N.Y. Mar. 30, 2017) (internal quotation marks omitted).

There is no dispute that Plaintiff did not purchase the product at issue from P&G.  She allegedly purchased the product from "stores including Walmart."  Compl. ¶ 48.  And Plaintiff seeks only recompense for economic harms resulting from the breach.  *Id.* ¶ 87.  Her breach-of-implied-warranty claim thus fails as a matter of law.  *See Colpitts v. Blue Diamond Growers*, 527 F. Supp. 3d 562, 591 (S.D.N.Y. 2021) (dismissing implied warranty claim where plaintiff purchased product from retail and online stores of third parties, not manufacturer); *Zottola v. Eisai*

*Inc.*, 2021 WL 4460563, at *7 (S.D.N.Y. Sept. 29, 2021) (dismissing implied warranty claim where plaintiff did not allege she purchased medications directly from manufacturer).

### C.     The Magnuson-Moss Warranty Act claim suffers from several defects.

The MMWA requires Plaintiff to "adequately plead a cause of action for breach of written or implied warranty under state law." *Budhani v. Monster Energy Co.*, 527 F. Supp. 3d 667, 686 (S.D.N.Y. 2021). As noted above, however, Plaintiff's state-law warranty claims fail because there are no plausible allegations that P&G breached any warranty, Plaintiff was injured by any purported breach of warranty, Plaintiff provided P&G with timely pre-suit notice, and (with respect to the implied warranty claim) Plaintiff was in privity with P&G. The derivative MMWA claim fails for the same reasons.

The MMWA claim is defective for three additional reasons.

*First*, the challenged representation is not a covered "warranty" as defined in the MMWA. The MMWA defines "warranty" as a "written affirmation" that a consumer product will be "defect free or will meet a specified level of performance over a specified period of time." 15 U.S.C. § 2301(6). The phrase "eliminates odors" is a description of the product, not an affirmation that it will be defect free or meet some specified level of performance over time. *See, e.g.*, *Bowling v. Johnson & Johnson*, 65 F. Supp. 3d 371, 378 (S.D.N.Y. 2014) (dismissing MMWA claim because representation "Restores Enamel" on label was product description, not a warranty).

*Second*, Plaintiff cannot satisfy the $25 amount-in-controversy threshold for MMWA claims. Under the statute, "[n]o claim shall be cognizable . . . if the amount in controversy of any individual claim is less than the sum or value of $25." 15 U.S.C. § 2310(d)(3)(A). Plaintiff does not allege she paid more than $25 for her purchase of Febreze (nor could she). *See* Compl. ¶ 32 (alleging Febreze costs $3.99). She is therefore statutorily barred from asserting a MMWA claim. *See Trisvan v. Regal Ent. Grp.*, 2021 WL 620981, at *4 (E.D.N.Y. Feb. 17, 2021) (dismissing

MMWA claim when plaintiff did not meet amount-in-controversy requirement); *Ebin v. Kangadis Food Inc.*, 2013 WL 3936193, at *1 (S.D.N.Y. July 26, 2013) (similar, and rejecting argument that CAFA jurisdiction allows a plaintiff to avoid the amount-in-controversy requirement).

*Third*, MMWA claims are only permitted if the number of *named plaintiffs* exceeds 100. *See* 15 U.S.C. § 2310(d)(3)(C) ("No claim shall be cognizable . . . if the action is brought as a class action, and the number of named plaintiffs is less than one hundred."). Because Plaintiff is the sole named plaintiff in this action, she does not meet the 100-named plaintiff threshold for bringing a MMWA claim. *See Glover v. Bob's Disc. Furniture, LLC*, --- F. Supp. 3d ---, 2022 WL 3353454, at *6 (S.D.N.Y. Aug. 12, 2022) (dismissing MMWA claims "[b]ecause there are not 100 named plaintiffs in this class action"); *Gavilanes v. Gerber Prod. Co.*, 2021 WL 5052896, at *7 (E.D.N.Y. Nov. 1, 2021) (same).

## V.     Plaintiff's Fraud Claim Should Be Dismissed.

To plead a fraud claim under New York law, Plaintiff must allege (1) "a material misrepresentation or omission of fact"; (2) that P&G "knew to be false"; (3) which P&G made "with the intent to defraud"; (4) upon which Plaintiff "reasonably relied"; and (5) which caused injury to Plaintiff. *Fin. Guar. Ins. Co.*, 783 F.3d at 402. These elements, moreover, are subject to Rule 9(b)'s heightened pleading requirements. *See Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006).

In addition to the global defects identified above, Plaintiff's fraud claim should be dismissed because the Complaint fails to plead facts suggesting that P&G acted with fraudulent intent. A plaintiff alleging fraud must plead specific facts giving rise to a "strong inference of fraudulent intent, which may be established by alleging either (a) facts to show that defendants had both motive and opportunity to commit fraud, or (b) facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Indus. Tech. Ventures, L.P. v. Pleasant T.*

*Rowland Revocable Trust*, 280 F.R.D. 86, 94 n.4 (W.D.N.Y. 2012) (cleaned up).  "[C]onclusory and legal allegations, devoid of particularized facts giving rise to an inference of scienter, are insufficient . . . under Rule 9(b)."  *Hesse*, 463 F. Supp. 3d at 473.

The Complaint contains no such allegations.  Instead, Plaintiff relies on the conclusory assertion that P&G's "fraudulent intent is evinced by its knowledge that the Product was not consistent with its representations."  Compl. ¶ 100.  That type of "rank speculation does not support a strong inference of intent."  *Rodriguez v. Hanesbrands Inc.*, 2018 WL 2078116, at *8 (E.D.N.Y. Feb. 20, 2018); *Dash*, 27 F. Supp. 3d at 362 (conclusory allegation that "Defendant intentionally concealed and failed to disclose the true facts about" challenged product found insufficient); *Prickett v. New York Life Ins. Co.*, 896 F. Supp. 2d 236, 246 (S.D.N.Y. 2012) (allegation that "defendants were aware that their statements were false when they were made" was too conclusory).

## VI.    Plaintiff's Negligent Misrepresentation Claim Should Be Dismissed.

"Under New York law, '[a] claim for negligent misrepresentation requires the plaintiff to demonstrate (1) the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the information was incorrect; and (3) reasonable reliance on the information.'"  *Fero v. Excellus Health Plan, Inc.*, 236 F. Supp. 3d 735, 771 (W.D.N.Y. 2017) (citation omitted).  To plead the necessary special relationship, a plaintiff must show that there was "a closer degree of trust between the parties than that of the ordinary buyer and seller."  *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 788 (2d Cir. 2003).  "[A] basic commercial transaction does not give rise to a special relationship," *Izquierdo*, 2016 WL 6459832, at *9, and "where the statement at issue is directed at a 'faceless o[r] unresolved class or persons,' no duty of care arises," *Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 584 (2d Cir. 2005) (citation omitted).

Plaintiff's negligent misrepresentation claim flounders on the "special relationship" requirement.  The Complaint describes a relationship between an ordinary buyer and seller:  P&G sells products through retailers such as Walmart, and Plaintiff—a consumer that P&G had no prior knowledge of or relationship with—purchased the product.  Faced with similar allegations, courts in this circuit have routinely dismissed negligent misrepresentation claims.  *See, e.g.*, *Cosgrove v. Oregon Chai, Inc.*, 520 F. Supp. 3d 562, 585 (S.D.N.Y. 2021) (dismissing negligent misrepresentation claim because no special relationship between tea manufacturer and consumer); *Campbell*, 516 F. Supp. 3d at 389–90 (dismissing negligent misrepresentation claim because no special relationship between graham cracker manufacturer and consumer).

In addition, the economic loss rule bars Plaintiff's negligent misrepresentation claims. Under New York law, "a plaintiff who has suffered economic loss, but not personal or property injury, may not recover in tort" on a claim of negligent misrepresentation.  *Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 297 (S.D.N.Y. 2015) (quotation marks omitted); *Warren v. Whole Foods Mkt. Grp., Inc.*, 574 F. Supp. 3d 102, 118 (E.D.N.Y. 2021) ("Since [plaintiffs] allege no physical or property harm, only that they paid price premiums, the economic loss doctrine applies." (citation omitted)).  Although a "limited exception" exists for negligent misrepresentation claims where there is "either actual privity of contract between the parties or a relationship so close as to approach that of privity," Plaintiff has not, for the reason discussed above, met her "heavy burden" to allege the type of special relationship required to fall within this exception.  *Travelers Cas. & Sur. Co. v. Dormitory Auth.-State of New York*, 734 F. Supp. 2d 368, 380–81 (S.D.N.Y. 2010) ("New York continues to narrowly define the ambit of duty created by privity and relationships so close as to approach that of privity." (cleaned up)).

## VII.    Plaintiff's Unjust Enrichment Claim Should Be Dismissed.

To state an unjust enrichment claim under New York law, a plaintiff must show that "(1) the other party was enriched, (2) at the other party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered." *McCracken v. Verisma Sys., Inc.*, 2022 WL 3566682, at *5 (W.D.N.Y. Aug. 18, 2022).  Plaintiff's unjust enrichment claim fails for several reasons.

*First*, the unjust enrichment claim should be dismissed as duplicative of Plaintiff's other claims.  Under New York law, "[a]n unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim." *R.R. Donnelley & Sons Co. v. Marino*, 2021 WL 4441515, at *6 (W.D.N.Y. Sept. 28, 2021) (quotation omitted).  Here, Plaintiff's single-paragraph unjust enrichment claim is entirely duplicative of her other causes of action:  it relies on the same factual allegations and the same theory of liability.  *See* Compl. ¶ 101.

*Second*, Plaintiff does not adequately allege that she conferred any direct benefits on P&G. Instead, Plaintiff admits she purchased the product from a third party, *see id.* ¶ 48, and such claims cannot support an unjust enrichment claim because it is the third party, not the product manufacturer, that receives the benefit of the transaction, *see In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 383 F. Supp. 3d 187, 272 (S.D.N.Y. 2019).

## CONCLUSION

For the foregoing reasons, this Court should dismiss the Complaint with prejudice.


Dated: November 2, 2022                              Respectfully Submitted:

                                                     */s/ Cheryl A. Possenti*
                                                     Cheryl A. Possenti
                                                     GOLDBERG SEGALLA
                                                     665 Main Street
                                                     Buffalo, NY 14203

cpossenti@goldbergsegalla.com
(716) 566-5444

Henry Liu (*pro hac vice* pending)
Andrew Soukup (*pro hac vice* pending)
Alyssa Vallar (*pro hac vice* pending)
COVINGTON & BURLING LLP
One City Center
850 Tenth Street, NW
Washington, DC 20001
hliu@cov.com
asoukup@cov.com
avallar@cov.com
(202) 662-6000

*Attorneys for Defendant*
*The Procter & Gamble Company*

24